IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LARRY D. JOHNSON,                          )
M22661,                                    )
                                           )
                    Plaintiff,             )
                                           )
vs.                                        )
                                           )
B. SADLER,                                 )
JOHN DOES 1-7,                             )          Case No. 24-cv-1385-DWD
WEXFORD HEALTH SOURCE, INC.,               )
ANTHONY WILLS,                             )
JEFFREY OLSON,                             )
JEFF MULHOLLAND,                           )
KELLY PIERCE,                              )
LATOYA HUGHES,                             )
MATTHEW DULANEY,                           )
                                           )
                    Defendants.            )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Larry D. Johnson, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard) brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that on October 10, 2023, prison staff used excessive force to restrain him on the yard, continued to assault him inside the infirmary, and denied him medical care. He also includes allegations about a pre-existing injury and separate incidents of excessive force. Plaintiff seeks monetary and injunctive relief.

Plaintiff's Amended Complaint (Doc. 7) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to

screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

On October 10, 2023, Plaintiff claims that while on the yard Defendants Sadler and John Does 1-4 used excessive force against him when they sprayed him with insprajet, shot him with pepper balls, sprayed multiple cans of mace in his face, and physically battered him. He claims he was brutally beaten with fists and kicks while on the ground and not resisting, and that he was further beaten even when he was cuffed and shackled on the ground. (Doc. 7 at 10). He suggests that the beating may have been in response to his attempts to raise issues he had previously grieved with staff. Instead of trying to offer help for the grieved issues, the staff demanded that he cuff up and leave the yard. (Doc. 7 at 11). During the altercation, he alleges Defendant Dulaney grabbed and squeezed his genitals and then pulled dreadlocks out of his head to keep as a "souvenir." (Doc. 7 at 11).

Plaintiff alleges that two officers who escorted him off the yard intentionally hit his head on the gate. He was then placed in a room where he was cuffed to a stool on the floor. Defendant Sadler entered the room and struck Plaintiff in the face with a closed

fist.  John Doe 5 then entered the room and sprayed Plaintiff in the face with mace while he was still cuffed to the floor.  (Doc. 7 at 11).

Jane Doe 1 entered the room to check Plaintiff's blood pressure, but otherwise refused medical care despite his verbal pleas and his visibly noticeable injuries.  (Doc. 7 at 11).

Plaintiff was stripped down to begin a suicide watch, at which time Defendant Dulaney made a comment about how he had tightly gripped Plaintiff's genitals during the scuffle on the yard.  Dulaney indicated he wished he could repeat the act.  (Doc. 7 at 11).

Plaintiff claims he has filed multiple grievances seeking medical care from the date of the beating through April of 2024, but he has not received any care.  He indicates Defendant Wills must have reviewed the grievances because they were submitted directly to him for an emergency status determination, and the responses bore his signature.  (Doc. 7 at 12).  Plaintiff claims this indicates that Wills is aware of his situation but has refused to act.  In a further attempt for assistance, Plaintiff wrote the Governor's office, and that correspondence was forwarded to Wills, who then sent him a memorandum on December 8, 2023, but otherwise failed to act. (Doc. 7 at 12).  He attached the memorandum as an exhibit.  In the memorandum, Wills simply indicated there was an ongoing internal investigation and that he would be notified of the outcome. (Doc. 7 at 30).

Plaintiff further alleges that Defendants Olson, Mulholland and Pierce are grievance officers who have failed to investigate issues he has raised via grievances

before and after October 10, 2023. (Doc. 7 at 12). He faults Defendant Latoya Hughes (the current Director of IDOC) because her name was on the December memorandum from Wills. (Doc. 7 at 12).

In an unrelated vein, Plaintiff alleges that on November 24, 2023, and February 2, 2024, he had EKGs after he complained of extreme chest pains. After one of the EKGs, Jane Doe 2 told him she did not know what plagued him, but it was not his chest. She did nothing further to investigate his medical condition. (Doc. 7 at 12). Plaintiff faults Wexford for employing Jane Does 1 and 2. (Doc. 7 at 13). He explains that he has severe pain in his neck, chest, right shoulder, arm, hand and back, and that these issues interfere with his daily activities. A previous injury that involved half of his right hand and his elbow has now gotten worse and impacts the whole right side of his upper body. He explains his pain medications have expired.

On February 14, 2024, Plaintiff alleges that John Doe 6 retaliated against him by turning off his water and toilet and deploying mace in his cell. (Doc. 7 at 13). He alleges identical conduct by John Doe 7 on February 28, 2024. He claims he grieved these incidents, but his grievances came up missing, so he initiated a hunger strike on February 29, 2024, to draw more attention to his situation. (Doc. 7 at 13-14).

Plaintiff indicates at the end of his complaint that he has been scheduled to see the nurse practitioner several times between October 10, 2023, and April 2024, but his appointments have been cancelled for unknown reasons. Meanwhile, other inmates have attended appointments. This is preventing him from getting needed physical therapy or

treatment for his preexisting right hand issue.  (Doc. 7 at 14).  He has received ibuprofen a few times, but it is not sufficient to alleviate his pain.

As for the grievance process, he alleges it has been more than seven months since he filed certain grievances, and he has not gotten a response to some grievances. Plaintiff's exhibits include grievances that appear fully exhausted, as well as at least some where it appears he is still awaiting a response.  For example, there is grievance K004-1023-0916, which concerns Defendant Dulaney's conduct on October 10, 2023.  (Doc. 7 at 23-26).  This grievance has a complete Administrative Review Board Response (Doc. 7 at 28).  By contrast, grievance K4-1023-0914 was filed on the same day and concerns the excessive force on October 10, 2023. (Doc. 7 at 19-20).  A counseling summary from April 26, 2024, indicates that this grievance is still pending at the second level of review.  (Doc. 7 at 54).

In addition to grievances, Plaintiff submitted other documents and affidavits from fellow inmates.

Based on the allegations in the Amended Complaint, the Court will designate the following claims:

Claim 1:      **Eighth Amendment excessive force claim against Defendants Sadler, Dulaney, and John Does 1-5 for their conduct on October 10, 2023;**

Claim 2:      **Eighth Amendment deliberate indifference claim against Jane Doe 1 for denying Plaintiff medical care on October 10, 2023;**

Claim 3:      **Eighth Amendment deliberate indifference claim against Defendants Wills, Olson, Mulholland, Pierce and Hughes**

for failing to thoroughly investigate Plaintiff's multiple grievances;

Claim 4:        Eighth Amendment excessive force claim against John Does 6 and 7 for their use of mace on February 14 and 28, 2024;

Claim 5:        Eighth Amendment deliberate indifference claim against Jane Doe 2 for refusing to further investigate Plaintiff's chest pain in November of 2023 or February of 2024.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

<u>Preliminary Dismissal</u>

Plaintiff faults Defendant Wexford Health Sources, Inc., for employing Jane Does 1 and 2, but Wexford's mere role as an employer is insufficient to state a claim because there is no respondeat superior liability under § 1983. *See Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (there is no respondeat superior liability against private corporations, so Wexford can only be held liable if a constitutional violation was caused by a policy or custom of the corporation itself). Plaintiff discusses chronic pain and injuries in the paragraph where he names Wexford, but he does not describe how Wexford itself contributed to these issues. Near the end of the complaint Plaintiff also alleges that some of his medical appointments with the nurse practitioner have been cancelled, but he does not attribute the cancellations to any specific defendant. Plaintiff's

complaint demonstrates no freestanding basis for a claim against Wexford, so this defendant is dismissed.

## Analysis

### Claim 1

An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" for an excessive force claim not the severity of the injury, but whether the force used was 'malicious and sadistic.' *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Plaintiff's allegations against Defendants Sadler, Dulaney, and John Does 1-5 are sufficient to proceed on a theory of excessive force. The incidents of excessive force occurred at Menard, so the Warden of Menard will be added in his official capacity to assist with the identification of the John Doe individuals.

### Claim 2

To state a claim for deliberate indifference to a serious medical need, an inmate must show that (1) he suffered from an objectively serious medical condition; and (2) the defendant was deliberately indifferent to a risk of serious harm from that condition. *Rasho v. Elyea*, 856 F.3d 469, 475-76 (7th Cir. 2017). At this juncture, Plaintiff alleges that Jane Doe 1 saw him immediately after he had been severely beaten and while he was still bloody and coated in chemical spray. He alleges she checked his blood pressure but

otherwise refused all medical assistance for his visible injuries. These allegations are sufficient to proceed on Claim 2 against Jane Doe 1.

## Claim 3

In Claim 3, Plaintiff alleges that Defendants Anthony Wills (the Warden), and Jeffrey Olson, Jeff Mulholland, Kelly Pierce and Latoya Hughes have refused to investigate his situation or to offer assistance. Specifically, as to Wills, Plaintiff insists that he must be aware of his situation, but that he has knowingly turned a blind eye because he has signed off on grievances filed as emergencies but has not otherwise ensured that the situation has been addressed. He also alleges Wills was further made aware of his circumstances after he wrote the Governor, and Wills then sent Plaintiff a memorandum indicating the incident was being investigated. Hughes' name was listed on the memorandum letterhead. By contrast, as to Olson, Mulholland and Pierce, Plaintiff merely alleges they processed grievances and did not investigate thoroughly.

Merely mishandling a grievance by someone who did not participate in the underlying conduct complained of is not enough to sustain an Eighth Amendment claim. *See e.g., Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011). However, turning a blind eye and plainly failing to investigate a serious issue may be enough to state a claim. *See e.g., Perez v. Fenoglio,* 792 F.3d 768, 792 (7th Cir. 2015) (an inmate's highly detailed grievances concerning a serious medical condition and inadequate care, in addition to other highly detailed correspondence, may be enough to establish an individual's deliberate indifference).

The distinction between mishandling a grievance versus turning a blind eye is nuanced.  Here, if Plaintiff's only allegation pertaining to Wills was that he had signed off on grievances submitted under emergency status, that would be more akin to solely processing grievances than it would be to turning a blind eye.  However, in addition to his role in the grievance process, Plaintiff alleges that Wills also became aware of his situation when an inquiry to the Governor's office prompted Wills to send a memorandum directly to Plaintiff.  This at least suggests that Wills was repeatedly informed of his situation.  Wills indicated in the memorandum that the incident Plaintiff complained of was being internally investigated, but Plaintiff does not indicate if he was ever informed of the results of that investigation.  Ultimately, this claim will turn on information about what Wills personally knew about Plaintiff's condition, and what Wills did in response.  If it comes to light that Wills ensure the situation was investigated to the fullest of his ability, then this claim will not succeed.  But at this earliest stage of review, Plaintiff will be allowed to proceed against Wills on the premise that Wills turned a blind eye to his repeated grievances and additional correspondence about the events on October 10, 2023.

By contrast, Plaintiff will not be allowed to proceed against Defendants Olson, Mulholland or Pierce, because his complaint does not suggest that these three had any involvement in the underlying conduct.  Their sole role was to process grievances.  The mishandling of a grievance does not support an Eighth Amendment claim, so Claim 3 will be dismissed as to these three.

Finally, Plaintiff faults Defendant Latoya Hughes, the current IDOC director because her "name is on the memorandum from [Wills] concerning the issues prior to, on and after 10/10/23 but did nothing to help." Hughes' name being listed on a piece of letterhead is not sufficient to attribute personal knowledge or responsibility to her concerning the issues Plaintiff raises in this lawsuit. (Doc. 7 at 30). Plaintiff does not suggest he ever personally attempted to correspond with Hughes about his situation, so he cannot proceed against her on Claim 3.

**Claims 4-5**

Claims 4 and 5 concern distinct events of excessive force in February of 2024, and distinct instances of medical treatment in November of 2023 and January of 2024. These instances are not clearly related to Claims 1-3. As a part of the §1915A initial review of civil pleadings filed by inmates, a court has discretion to sever unrelated claims into separate lawsuits for more efficient resolution. *See e.g., Dorsey v. Varga,* 55 F.4th 1094, 1107 (7th Cir. 2022) (a court may sever into a new case mis-joined claims).

Rules 18 and 20 of the Federal Rules of Civil Procedure provide certain limitations on the presentation of different claims against different parties in a single lawsuit. "A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 683 (7th Cir. 2012). Multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence, or series of transactions or occurrences and presents a question of law or fact common to all. *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007). The Seventh Circuit has

cautioned that courts should guard against "scattershot" pleading strategies, and that they should "target for dismissal 'omnibus' complaints—often brought by repeat players—that raise claims about unrelated conduct against unrelated defendants." *Mitchell v. Kallas*, 895 F.3d 492, 503 (7th Cir. 2018). Even if claims may be eligible for joinder under Rule 20, a Court still possesses discretion to separate the claims into distinct lawsuits. *See e.g.*, *Dorsey*, 55 F.4th at 1103.

Here, there could be common legal questions amongst some of Plaintiff's claims. For example, Claim 1 concerns excessive force, and so does Claim 4. But these claims involve entirely different defendants and are separated in time by months. As such, the Court finds that the differences outweigh the commonalities, and that it would be more efficient to separate Claim 4 into a new lawsuit.

The same goes for Claim 5—it involves the same deliberate indifference legal standard as might apply to Claim 2, but it otherwise involves distinct facts and different nurses. While Claim 2 addresses a nurse's response to Plaintiff's immediate medical condition, Claim 5 involves a chronic medical issue that Plaintiff had and/or new chest pain that presented months after the incident of alleged excessive force. Thus, the Court concludes that is also most efficient to sever Claim 5 into a separate lawsuit.

## Motion to Admonish (Doc. 10)

Plaintiff filed a Motion wherein he alleged that he had not yet received a consent form that the Court mailed in May of 2024, and he complained that mail from the Court is opened in the mailroom prior to delivery to inmates. As to the consent form, Plaintiff filed his consent form the day before the Court received this Motion, so that aspect of his

Motion is moot. To the extent he complains that Court mail is opened outside his presence, Plaintiff requests that the Court either direct the prison to stop this practice, or he be transferred to a different institution. (Doc. 10 at 2). "[W]hen a prison receives a letter that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence." *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005).

However, the same protection does not necessarily apply to other legal related correspondence from sources other than an attorney who is actively representing an inmate. *Id.* For example, in *Kaufman*, the Court did not find that an inmate had a protected interest in mail opened outside his presence that was from the Department of Justice, the American Civil Liberties Union, or even his own mail to a federal district court for filing that was returned for insufficient postage. *Id.* at 685-86. The purpose of potentially protecting legal mail from being opened is to protect an inmate's Sixth Amendment right to counsel and his ability to communicate in confidence with counsel, *see*, *Deida v. Warden*, 2024 WL 2746608 at * 2 (N.D. Ind. May 28, 2024), but such a concern would not apply to a document transmitted from the Court that is publicly accessible, such as a blank form to consent to the jurisdiction of a United States Magistrate Judge.

Here, the Court does not find that the mail opening Plaintiff describes would violate the First Amendment, but even if it did, this allegation is new and distinct from the other issues presented in the complaint. A standalone motion is not an appropriate way to amend the complaint, and an inmate cannot seek emergency injunctive relief for an issue not related to the underlying claims and parties in the case. As such, there is no

relief warranted by Plaintiff's Motion, and to the extent he seeks emergency relief or a change to the handling of his mail, any such request is denied.

## Disposition

**IT IS HEREBY ORDERED THAT** the Clerk of Court shall sever Claim 4 against Defendant John Does 6 and 7 into a new lawsuit; and shall sever Claim 5 against Jane Doe 2 into a second new lawsuit.  In each new lawsuit, the Clerk shall docket:

- This Memorandum and Order;

- The Amended Complaint (Doc. 7);

- Plaintiff's Motion for Leave to Proceed In Forma Pauperis (Doc. 2).

Plaintiff will have an opportunity in each new case to decide if he would like to proceed or to withdraw the newly created case.  The Clerk shall then **TERMINATE** Defendants John Does 6 and 7, and Jane Doe 2, from this case because there are no additional claims against them.

**IT IS HEREBY ORDERED THAT Claim 1** of the Amended Complaint (Doc. 7) survives against Defendants B. Sadler, Matthew Dulaney, and John Does 1-5; **Claim 2** survives against Defendant Jane Doe 2; and **Claim 3** survives against Defendant Anthony Wills.  By contrast, **Claim 3** is insufficient as to Defendants Jeff Mulholland, Jeffrey Olson, Kelly Pierce, and Latoya Hughes.  The Clerk is **DIRECTED** to **TERMINATE** Defendants Mulholland, Olson, Pierce, and Hughes.  There is also no sufficient claim against Wexford Health Sources, Inc., so the Clerk is **DIRECTED** to **TERMINATE** Wexford.

The Clerk of Court is **DIRECTED** to prepare for Defendants B. Sadler, Matthew Dulaney, Anthony Wills, and the Warden of Menard (official capacity only for John Doe

identification): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 7), and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it may involve the exchange of medical records.

Plaintiff's Motion to Admonish (Doc. 10) is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 31, 2024

DAVID W. DUGAN
United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.