IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| LARRY D. JOHNSON, #M22661, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-cv-1805-RJD |
| v. | ) | |
| | ) | |
| QUINNTON BENT and DANIEL GARCIA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff, currently incarcerated within the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 USC §1983.  Doc. 2.  He alleges that on February 14, 2024, Defendant Bent turned off his water and toilet and sprayed mace in his cell at Menard Correctional Center ("Menard").  *Id*., p. 7; Doc. 10; Doc. 19.  He alleges identical conduct by Defendant Garcia on February 28, 2024.  *Id*.  Plaintiff submitted grievances that were lost, so he started a hunger strike on February 29, 2024.  Doc. 10.  Following the Court's threshold review pursuant to 42 U.S.C. §1915A, Plaintiff proceeds on one Eighth Amendment claim against Defendant Bent and Garcia.  *Id*.  This matter comes before the Court on Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies.   Doc. 40.

**Material Facts**

Plaintiff submitted an emergency grievance at Menard on February 17, 2024.  Doc. 40-7, p. 1.  He described the alleged event involving Defendant Bent.  *Id*.  The Warden determined

the grievance (hereinafter, the "Bent grievance") was not an emergency on March 19, 2024.  *Id.*

Plaintiff's counselor received the Bent grievance on March 20, 2024 and responded on March 29,

2024.  *Id.*

In his Response to Defendants' Motion for Summary Judgment, Plaintiff contends that he

gave the Bent grievance (with the counselor's response) to his neighbor on or about April 14, 2024

to "drop in the grievance box" during the second shift because Plaintiff was "usually asleep on 2ⁿᵈ

shift by [the] time the grievance box come[s] around."  Doc. 41, p. 2.   Plaintiff further contends

that the grievance box did not come to his gallery that night, so his neighbor threw the Bent

grievance over to another gallery and the "grievance disappeared after that."  *Id.*   Plaintiff

submitted a statement from that inmate:

> On or about 4/14/2024 I Mr. McKissick was house[d] in RHU
> ("restricted housing unit") at Menard CC North #2 802.   Mr. Larry
> Johnson requested if I'm going to be up for the grievance box and if
> I can I make sure the grievance Mr. Johnson was filing was placed
> in the box.   I inform[ed] him I would.
>
> 8 gallery staff member didn't walk the grievance box that night but
> 6 Gallery Officer did assign Officer E. around 10:15 p.m. I Andrew
> McKissick called Officer E. and request can my grievances and Mr.
> Johnson be placed in the box[?] Officer E. told me to throw the
> grievance over for he will put them in the box. I never heard
> anything back from my grievance saying it was filed. I have asked
> Officer E. why he didn't place me and Mr. Johnson grievance in the
> grievance box.
>
> As I write this affidavit let it be known that Officers here say they
> can only put the grievances in the box.  But when staff do you
> receive a summary back showing when the grievance was filed. I
> didn't with these grievances.

Doc. 41, p. 20.   On April 18, 2024, Plaintiff sent a kite to his counselor, asking for an update on

three specific grievances (none of which were involved this case) and requesting a copy of the

Bent grievance.   *Id.*, p. 36.   His counselor responded that he would need to "write records office

Page **2** of **9**

with a money voucher for this request." *Id.*    Plaintiff submitted a request to the grievance office on April 25, 2024, in which he stated that he needed "a copy [of the Bent grievance] w/ counselor's response for 2nd level review."  *Id.*, p. 37.

Regarding Plaintiff's allegations against Defendant Garcia, Plaintiff submitted another grievance dated March 17, 2024 in which he described the events on February 28, 2024 (hereinafter, the "Garcia grievance").    Doc. 40-7, p. 4.    He submitted the grievance as an emergency on March 17, 2024; the Warden determined it was not an emergency on March 21, 2024.    *Id.*    The grievance officer recommended denying the grievance on May 28, 2024 and also noted that it was a duplicate to the grievance dated February 17, 2024.    *Id.*, p. 3.    The Warden concurred on May 30, 2024.    *Id.*

Plaintiff filed his Complaint on May 24, 2024.    Doc. 2, p. 1.

### Exhaustion Requirements

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court.    Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing a lawsuit in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident or problem to his or her institutional counselor.    20 ILL. ADMIN. CODE § 504.810(a).    The grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where

and the name of each person who is the subject of or who is otherwise involved in the complaint."

20 ILL. ADMIN. CODE § 504.810(c).   If more than sixty days has passed since the discovery of the incident or problem, the grievance will still be considered if the inmate can demonstrate good cause for the lapse of time.   *Id*. §504.810(a).

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances."   *Id*. §504.830(e).   The CAO then advises the inmate of a decision on the grievance.   *Id.*   An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision.   *Id*. § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006).   The ARB will submit a written report of its findings and recommendations to the Director who shall make a final determination within 6 months of receipt of the appeal.   20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may also request that the prison treat his grievance as an emergency "by forwarding the grievance directly to the Chief Administrative Officer."   *Id*. at § 504.840(a).   The Chief Administrative Officer decides whether there is "a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and, if so, expedites processing.   *Id*. at § 504.840(a)-(b).   If the Chief Administrative Officer finds that the grievance does not constitute an emergency, the inmate "shall be notified in writing that he…may resubmit the grievance as non-emergent, in accordance with the standard grievance process."   *Id*. at § 504.840(c).

### *Pavey* Hearing

On November 17, 2025, the Court held an evidentiary hearing on the "debatable factual

issue" of whether administrative remedies were available to Plaintiff prior to filing suit.  *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).  Plaintiff testified.  Defendants called Jeffrey Olson, a correctional counselor, to testify.

**Plaintiff's testimony**

Plaintiff testified that immediately after the incident on February 14, 2024, he called for crisis intervention so that staff could see the damage done to his cell and he was moved to a different cell "that day."  Once he was in the new cell, he submitted the Bent grievance about the events that occurred on February 14, 2024.  Plaintiff customarily handwrites a copy of every grievance he submits.  A few days passed and Plaintiff did not receive a receipt for the Bent grievance, so he submitted another one that also "disappeared."  Plaintiff wrote the Bent grievance again but gave it to a member of the mental health staff to submit.  Plaintiff then received a number for the Bent grievance (#K4-0324-1438), indicating that it was received and logged by the grievance office.

Plaintiff received the first level response to the Bent grievance from his counselor in mid-April.  At that time, he was in North 2 restricted housing unit in cell #243.  Typically, a correctional officer would come around his gallery and collect grievances that were placed in a "grievance box."  Plaintiff indicated that he took psychotropic medications at 8:00 p.m. daily and if the grievance box came around at 10:00 p.m., he was asleep.[1]  The grievance box typically came around his gallery after he fell asleep at 8:00 p.m.  However, he could ask an officer for the grievance box when he was awake.  Plaintiff gave the Bent grievance (with the counselor's response) to another inmate to place in the grievance box.  The other inmate told Plaintiff that he

---

[1] Plaintiff provided this information while cross examining Defendants' witness.

had to crumple up the grievances and throw them down to an officer in gallery six.  Plaintiff "never heard anything more" on the Bent grievance.

Plaintiff wrote a grievance regarding the events on February 28, 2024 (the Garcia grievance) and gave it to mental health staff to submit for him.  He received a number for that grievance (K4-0324-1469) and ultimately a decision by the Warden, but it took months.   Both the prison and the Administrative Review Board found that the Garcia grievance was a duplicate to the Bent grievance even though the grievances involved two distinct events.

**Testimony by Jeffrey Olson**

Mr. Olson is a correctional counselor II at Menard and is currently (but temporarily) assigned to work as a grievance officer.  He has been a counselor since September 2023. He described the process by which grievances are gathered and brought to the grievance office.   He explained that the individual inmate is responsible for placing his grievance in the grievance box; staff will not do it for him nor can another inmate, unless the inmate has some type of disability. However, Mr. Olson does not personally gather grievances from the restricted housing unit nor has he witnessed correctional officers gathering grievances in the restricted housing unit.

Mr. Olson acknowledged that once the grievance officer received the grievance, the Warden should reach a decision on the grievance within two months if reasonably feasible.  He testified that the process may exceed two months at Menard related to staffing issues.

**Summary Judgment Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).   The

Page **6** of **9**

moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

Failure to exhaust administrative remedies is an affirmative defense for which Defendants bear the burden "of proving 'that an administrative remedy was available'" to Plaintiff and that he failed to exhaust that it. *Crouch v. Brown*, 27 F. 4th 1315, 1320 (7th Cir. 2022) (*quoting Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015)). Defendants have established that, prior to filing suit, Plaintiff did not fully exhaust the grievances regarding the February 14 and 28, 2024 events. Absent a genuine issue of material fact as to whether the grievance process was available to Plaintiff, this case must be dismissed.

Upon receiving the counselor's response to the Bent grievance, Plaintiff was instructed that if he disagreed with the response, it was his "responsibility to forward grievance, with counselor's response, to the grievance officer." Doc. 40-7, p. 1. The Court has considered Plaintiff's testimony and the statement from Mr. McKissick and assumes that on April 14, 2024, Plaintiff believed he would be asleep when the grievance box came to his cell and therefore unable to place the Bent grievance in it. The Court also assumes that Mr. McKissick threw his own grievance

Page **7** of **9**

and the Bent grievance down to an officer on the six gallery.   However, nothing before the Court (including Plaintiff's testimony) reflects that this was an acceptable method for grievance submission to the grievance office.   Plaintiff had other options; he could have requested the grievance box when he was awake, or asked a mental health staff member to submit it for him. Plaintiff's grievance records reflect that while he was in the restricted housing unit, he successfully submitted a total of six grievances that were received, logged, and considered by a grievance officer in February, March, and July 2024.   Doc. 40-3 (Plaintiff's Menard grievance log); Doc. 40-4, pp. 1-6 (reflecting Plaintiff's placement in North 2 disciplinary segregation).   The record therefore reflects that the grievance process was available to Plaintiff for the Bent grievance, but he did not properly utilize it.   *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2012) ("[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").   Summary judgment is therefore warranted in favor of Defendant Bent.

As for Plaintiff's claim against Defendant Garcia, Plaintiff filed this lawsuit before he fully exhausted the Garcia grievance.   Plaintiff filed suit six days before the Warden denied his grievance and more than a month before the ARB determined the Garcia grievance was a duplicate to the Bent grievance.   Plaintiff argues that he had no choice but to file suit on May 24, 2024 because, by that time, more than two months had passed since he submitted the grievance on March 17, 2024.   The regulations state that the Warden will reach a decision on the grievance within two months, when reasonably feasible.   From the date Plaintiff submitted the Garcia grievance until the date he filed suit, 68 days passed.[2]   Seventy-five total days passed from the time Plaintiff

---

[2]  A counselor did not review this grievance. Instead, the Warden immediately sent it to the grievance office for second level review. Doc. 40-7, p. 4.  Had a counselor conducted a first level review, Plaintiff would likely have waited

submitted the grievance until the Warden reached a decision.   Considering Mr. Olson's testimony that grievance processing was delayed at Menard due to staffing issues, the Court cannot reasonably infer that a two-week delay in receiving a decision from the Warden rendered the grievance process unavailable to Plaintiff.   *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004).

Plaintiff also argues that the grievance officer, Warden, and the ARB improperly determined that the Garcia grievance was a duplicate to the Bent grievance.   Regardless, Plaintiff filed suit before he received a decision on his grievance from Menard or the ARB.   His ultimate dissatisfaction with those responses does not change the outcome.   Summary judgment is appropriate in favor of Defendant Garcia.

### Conclusion

Defendants' Motion for Summary Judgment (Doc. 40) is GRANTED.    Plaintiff's claims against Defendants Bent and Garcia are DISMISSED WITHOUT PREJUDICE.   The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: November 24, 2025**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**

---

longer for a decision by the Warden.